RECEIVED
IN ALEXANDRIA, LA

SEP 3 0 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

WOODY D. BILYEU, ET AL                         CIVIL ACTION NO. 08-02006

-vs-                                                          JUDGE DRELL

JOHANSON BERENSON LLP, ET AL          MAGISTRATE JUDGE KIRK

## RULING AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING 12(b)(2) MOTION TO DISMISS (DOC. 53)

### INTRODUCTION

Before the Court is a 12(b)(2) motion by Defendants Franklin Thomason and Charles Hsin (hereinafter "Defendants") to dismiss Plaintiffs' claims against them for lack of personal jurisdiction. Doc. 53. For the reasons given below, the motion is PARTIALLY GRANTED - and CLAIMS ONE, THREE, and FOUR are DISMISSED as to Defendants Thomason and Hsin - and PARTIALLY DENIED, and claims TWO, FIVE, and SIX are NOT DISMISSED.

### LEGAL STANDARD

**I. Personal Jurisdiction Generally**

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982), cert. den., 450 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). When the district court rules on a motion to dismiss without an

evidentiary hearing, the plaintiff need only present a prima facie case of personal jurisdiction. *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230-31 (5th Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 [1985], and *Holt Oil and Gas Corp. v. Harvey*, 801 F.2d 773 [5th Cir. 1986], cert. den., 481 U.S. 1015, [1987]. Then, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiffs' favor. *D.J. Inv., Inv. v.Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

To help resolve the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).[1] "Once a plaintiff has established [a prima facie case for] minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair." *Id.* at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212-213 [5th Cir. 1999]).

"A federal district has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located." *Walk Haydel*, 517 F.3d at 242. Personal jurisdiction over a nonresident defendant thus

---

[1] Much of the following discussion is taken from the analysis in *Conwill v. Greenberg Traurig, L.L.P., et al.*, 2009 WL 5178310 (E.D.La. 2009).

attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment.  In this case, these two queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause of the U.S. Constitution. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313-14 (E.D.La. 1994).

Where a defendant "has continuous and systematic general business contacts" with the forum state, the court may exercise "general jurisdiction" over any action brought against the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414; *Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

## II. Specific Jurisdiction: the Fifth Circuit's 3 part analysis

The constitutional requirements for specific jurisdiction may be satisfied by showing that the defendant has sufficient "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 [1945]).  The Fifth Circuit follows a three-step analysis for this determination. First, a court must judge "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or

3

purposefully availed itself of the privileges of conducting activities there." *Nuivo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250-251 (1958).

This "minimum contacts" / "purposeful availment" inquiry is fact intensive. No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative. *Luv N' care*, 438 F.3d at 470. A single, substantial act directed toward the forum can support specific jurisdiction, *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990), but even multiple contacts, if "[r]andom, fortuitous, or attenuated . . . are not sufficient to establish jurisdiction." *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985). What is significant is whether the contacts suggest that the nonresident defendant purposefully availed itself of the privileges or benefits of the laws of the forum state. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S., at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), cert. den., 466 U.S. 962 (1984).

Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Nuivo Pignone*, 310 F.3d at 378. The proper focus of this step in the analysis is on the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). This is a claim specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Conwill v. Greenberg Traurig, L.L.P., et al.*, 2009 WL

5178310 at *3 (E.D.La. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 [5th Cir.2006]).

Finally, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 482). In this inquiry the Court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care*, 438 F.3d at 473; *see also*, *Burger King Corp.*, 471 U.S. at 476-77 (listing 7 factors). "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston*, 523 F.3d at 615 (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 [5th Cir. 1999]).

## III.  Minimum Contacts Deep-Dive

Personal jurisdiction may not be avoided merely because the defendant did not physically enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of the state in question, the courts have consistently rejected the notion that

5

an absence of physical contacts can defeat personal jurisdiction there. *Burger King*, 471 U.S. at 476-77.

On the other hand, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil*, 481 F.3d at 311. "A contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors - prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing - that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479 (internal citations omitted).

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action." *Wein Air*, 195 F.3d at 123; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir.1992). Instead, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed itself of the privilege of conducting business in the forum. Then, "because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require it to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475-76.

6

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332-33 [5th Cir.1986] [holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts]). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wein Air*, 195 F.3d at 213 (5th Cir. 1999); *see also*, *Ross v. Wohl*, 246 Fed. Appx. 856, 859-60 (5th Cir. 2007)(deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).

Under Louisiana law, actions taken by a corporation do not themselves vest a court with jurisdiction over its officers or employees. *Escoto v. U.S. Lending Corp.*, 675 So.2d 741, 745 (La. App. 4th Cir. 1996). Instead, a "court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state." *Id*. However, this "fiduciary shield" does not exempt an employee from jurisdiction if his actions would otherwise be sufficient, either those actions he took on his own or those he had taken on his behalf by the corporation, for jurisdiction to be proper:

> If an officer or employee is engaged in activities within the forum states' jurisdiction which would subject them to the state's long arm statute, jurisdiction by that state may be proper. Furthermore, if the corporation is not viable and the individuals are using it as a shield to conduct their personal activities a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals.

*Escoto v. U.S. Lending Corp.*, 675 So.2d 741, 745 (La. App. 4th Cir. 1996); *see also*, Sonja Larsen, *Validity, Construction, and Application of "Fiduciary Shield" Doctrine–Modern Cases*, American Law Reports, 79 A.L.R.5th 587 (2000).

The corporate veil cannot shield a defendant from jurisdiction where the corporation is his alter ego or actually being used to take actions for an owner's or director's benefit. *S&M Representatives Inc. v. Hrga*, 1997 WL 328004 (N.D. Tex. 1997), aff'd without opin, 180 F.3d 265 (5th Cir. 1999) (listing factors to be considered in making an alter ego determination, including "whether the corporation was undercapitalized . . . it was used to promote fraud or illegality . . . or the corporation was simply a sham."). Under Louisiana law, "there are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, where the court may ignore the corporate fiction and hold the individual shareholders liable. . . . It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation." *Andry v. Murphy Oil, U.S.A., Inc.*, 935 So.2d 239 (La.App. 4 Cir. 2006) (citing LSA-R.S. 12:95, *Dillman v. Nobles*, 351 So.2d 210 [La.App. 4 Cir.1977], and *Bossier Millwork Supply Co. v. D.R. Const. Co., Inc.*, 245 So.2d 414 [La.App. 2 Cir.1971]). Other factors include that: a party that does not have a "legitimate business purpose as its goal" in creating or operating a corporation; that the executives appointed to run a company "d[o] not do so or breach[] their duty to [the company][;] or that [a company] is undercapitalized." *Fina Oil and Chem Co. v. Amoco Prod. Co.*, 673 So.2d 668, 674-75 (La.App. 1 Cir. 1996).

8

Under New York law, a court will disregard the corporate form and "'pierce the corporate veil' whenever necessary to prevent fraud or achieve equity." *Walkovsky v. Carlton*, 18 N.Y.2d 414, 417 (1966); *Sweeney, Cohn, Stahl & Vaccaro v. Kane*, 6 A.D.3d 72, 76 (2d Dep't 2004). These situations include when a corporation commits fraud and the corporate officers either personally participate in a misrepresentation or have knowledge of it. *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46 (2001); *MORA v. RGB Inc.*, 17 A.D.3d 849 (3d Dep't 2005). The veil will rarely be pierced for "domination standing alone;" rather, "some showing of a wrongful or unjust act toward plaintiff is required ." *In re Morris v. State Dep't of Taxation & Fin..* 82 N.Y.2d 135, 141 (1993).

Under Louisiana law, "[t]he threshold question in determining [a choice of law issue] is whether there is a true conflict, a false conflict, or no conflict." *Wooley v. Lucksinger*, 14 So.3d 311, 356 (La.App. 1 Cir. 2008) (citing La. C.C. art. 3515 *et seq.*, and, *e.g.*, *Champagne v. Ward*, 893 So.2d 773, 786 [LA. 2005]). If the laws of two states are substantially similar such that they would yield the same resolution of a particular then there is no conflict and no need for a conflict of laws analysis. *Id.*

## ALLEGED FACTS

### I. The Plaintiffs' Complaint

In the present action, Plaintiffs Woody Bilyeu, et al. ("Plaintiffs") have filed suit accusing various defendants of conspiracy to construct and sell an illegal and fraudulent tax shelter scheme. Defendants who filed the present motion are owners and executives of Optech Limited ("Optech"), a Hong Kong foreign limited partnership that is in liquidation and has filed a "no asset bankruptcy" in Hong Kong. Doc. 53, p. 2. In the

9

complaint, Defendants are alleged, through Optech, to have "created, designed, and implemented" "the Loan Strategy," the name given to the allegedly fraudulent scheme. Optech is accused of promising to make a loan to Plaintiffs for 90% of the value of certain shares of stock conveyed to Optech as collateral; instead of retaining the collateral, Optech supposedly sold the shares and divided the proceeds between Defendants and their alleged co-conspirators. Doc. 1-2, pp. 4-5, 11-14. Defendants are alleged to have helped devise the scheme and, through Optech, "recruited" various individuals nationwide to sell it, including David Johanson of Johanson Berenson, LLP, who sold it to Plaintiffs in Louisiana. Mr. Johanson and his associates supposedly represented to Plaintiffs that they devised the scheme on their own and happened to choose Optech as their off-shore lender, when Optech and Defendants were actually executing a "preplanned game plan to sell an illegal and abusive tax shelter to client, including Plaintiffs" all along. Doc 1-2, pp. 4-5, 14; *see also*, Doc. 84, pp. 4-6 (memo opposing this motion, reiterating and clarifying certain allegations).

## II. Defendant's motion

In their memo supporting this motion to dismiss, Defendants deny having any involvement at all in the alleged fraud. Hsin claims that he "did not obtain any interest in Optech Limited until after the date of the loans of plaintiff's complaints," and Thomason likewise claims that "[h]e was not involved in the solicitation or operation of any of the loans of which plaintiff complains and became a director with Optech Limited after the time period of plaintiffs' complaint." Doc. 53, p.1, Doc. 53-1, p.2. They also deny having any other interaction with the state of Louisiana that could serve as the basis for

personal jurisdiction; both claims that "[m]over has not done any business in the State of Louisiana, nor sought to do any business, nor has he solicited any business within the State." Doc. 53, p. 1.

## III.  Plaintiff's Opposition

In limited discovery, Plaintiffs have uncovered additional facts which they include in their memo opposing this motion.  Most importantly, Plaintiffs have established, contrary to both his assertion in his memo and his initial claim in his deposition, that Defendant Hsin was personally involved in allegedly defrauding Plaintiffs through the Loan Strategy.  Specifically, they submit the "Loan Schedule" documents, 23 pages describing the terms of four (4) separate loans, each over $300,000 with a term of 40 years, Optech made to Defendant.  Both Hsin and Plaintiff Woody D. Bilyeu have personally signed or initialed every page.  Doc. 84-1, pp. 6-29.  Plaintiffs also submit a letter accompanying the schedules, addressed to "Mr. Woody D. Bilyeu" at "317 Thomas Mill Road" in "Winnfield, LA 71483."  The letter advises "Dear Mr. Bilyeu" that copies of the schedules for the loan transaction are included.  It concludes that "[h]opefully we will have the opportunity to be of service to you again in the future," and invites him to contact them at an American phone number it gives.  Doc. 84-1, p. 5.  Finally, Plaintiffs present a part of Mr. Hsin's deposition in which, after denying he had anything to do with the Loan Strategy or recognized the Loan Schedule documents placed in front of him, he admits the signatures on the Loan Schedule are his, though he claims to have signed or initialed all 23 pages without reading or comprehending any of them . Doc. 84-2, pp. 6-7.

11

<u>ANALYSIS</u>

In their memo opposing this motion, Plaintiffs appear to abandon their claim that Defendants were sufficiently present in Louisiana to warrant a finding of general jurisdiction; instead, they argue solely for specific jurisdiction. We agree with this premise and so only analyze the specific jurisdiction issue below.

**I.  Prong One of the Specific Jurisdiction test: Plaintiffs make a prima facie case of Defendant's alleged "minimum contacts" with the forum state**

With regards to the first, "minimum contacts" / "purposeful availment" prong of the specific jurisdiction test, we find multiple grounds by which both Defendants have sufficient contacts with the forum state to make the exercise of personal jurisdiction proper.

*1. First ground - Defendants' alleged personal involvement in a fraud directed at and with communications to residents of the forum*

First, Defendants allegedly reached into this state to commit a fraud. Specifically, Defendants are alleged to have:

- formulated, planned, and designed an alleged fraud they then perpetrated on residents of this state;

- recruited and sent other defendants into this state to carry out this fraud; and

- participated in the execution of the fraud by receiving property as collateral from Plaintiffs, selling the property and pocketing the proceeds instead of retaining it, and sending fraudulent correspondences to Plaintiff claiming and confirming they had honestly executed the transaction.

12

These actions together are more than sufficient to meet the Fifth Circuit's standards for allegations of intentional tort, which require as little as a single contact when the information in that contact is fraudulent and gives rise to a plaintiff's claim. Discussion, *supra*, p. 6, *e.g.*, *Wein Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Plaintiffs allege that Defendants personally participated in and had knowledge of this fraud, which Defendants deny. However, at this stage, plaintiffs need only present a prima facie case of personal jurisdiction; uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiffs' favor. *See* discussion, *supra*, p. 2, citing, e.g., *D.J. Inv., Inv. v.Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

Plaintiffs' case is strengthened, however, by the documents they have managed to uncover in discovery. This evidence flatly contradicts Defendants' blanket denials of both the timing of their interest in Optech and their personal involvement in the fraud. Defendants claim that they acquired their interest in Optech in July 2005, after the complained of fraud occurred, and thus they could have had no knowledge or involvement therein. However, the letter sent to Mr. Bilyeu from Optech is dated "October 26, 2005", months after Defendants acquired their interest, and at least one Defendants' signature is on multiple of the allegedly fraudulent documents. Doc. 84-1, pp. 5, 6-29.

Plaintiffs did not uncover additional evidence in discovery, and they did not find a specific document with Defendant Thomason's signature.  However, while a court "may receive discovery [on the personal jurisdiction issue], . . . unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor."  *Walk Haydel*, 517 F.3d at 241.  Additionally, "[o]nce a plaintiff has established [a prima facie case for] minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."  *Id.* at 245 (quoting *Wien Air*, 195 F.3d 208, 212-13).  Plaintiffs allege sufficient facts to make a prima facie case for minimum contacts and were able to support these allegations for at least one of the defendants with evidence submitted here.  It is not their burden to have uncovered evidence for both in the limited discovery allowed.  Such a rule would require the Court to play a fact finding role, and it would require Plaintiffs to make more than a prima facie case without the benefit of an evidentiary hearing, both of which are forbidden it by all precedent controlling on the Court.  It would also be exceedingly unwise, as it would allow the uncooperative or stubborn Defendant to avoid personal jurisdiction - and ultimately liability - where it legitimately lay.    We also note that Defendants apparently face a number of pending or ongoing investigations by both private plaintiffs and the U.S. Government relating to this alleged fraud.  That Plaintiffs' discovery has so far been only marginally fruitful, with Defendants issuing blanket denials of all allegations and claiming to not recognize documents they have self-evidently signed, is thus not surprising.  However, as discussed above, it would be

14

contrary to the Federal Rules of Procedure and manifestly unjust to penalize Plaintiffs for Defendants' present posture.

Finally, even were jurisdiction not proper on the basis of Plaintiffs' description of Defendants' alleged fraudulent contacts, we note that the Court would still have jurisdiction over Defendant Hsin based on the actions Plaintiffs can demonstrate he personally took in furtherance of the alleged fraud. As discussed, he signed every page of four deceitful contracts for fraudulent, long-term loans to residents of Louisiana, which were part of a mailing that included a letter personally addressed to Plaintiffs at their address in Louisiana. Though Defendant Hsin acted on behalf of Optech, he took these actions personally, and Louisiana law is clear that the fact that an officer took action on behalf of a corporation does not shield him from jurisdiction based on those actions. *See*, discussion, *supra*, p. 8; *Escoto v. U.S. Lending Corp.*, 675 So.2d 741, 745 (La. App. 4th Cir. 1996).

*2. Second ground - Defendants' establishment of an ongoing business relationship with, and continuing obligations between, themselves and residents of the forum*

Second, Defendants have established an ongoing business relationship with Plaintiffs that would make them susceptible to personal jurisdiction in this forum, even if all of their claims were true and no fraud was alleged to exist. Specifically, Defendants executed four separate loans with Plaintiffs of over $300,000 apiece, each with a terms of 40 years. Doc. 84-1, pp. 6-29. Defendants allegedly recruited local agents to reach into this state to sell these loans, and they personally memorialized this relationship in communications to Plaintiffs in the Loan Schedule mailings and accompanying letter.

Doc. 1-2, p. 5, Doc. 84-1, pp. 6-29.   Defendants purposefully availed themselves of the privilege of doing business in the forum state and the forum state's laws - for instance, if Plaintiffs had chosen not to repay the loans, Defendants would have had recourse to the laws and courts of this state to enforce these contracts - and are thus properly subject to suit in the forum states' courts for claims arising out of these obligations. *See*, discussion, *supra*, p. 6, citing, *e.g.*, *Burger King*, 471 U.S. at 479.

   This reasoning is strengthened by the observation that Defendants deliberately attempted to establish this ongoing business relationship with a resident of this state when they wrote and sent a letter to Bilyeu at his address in Louisiana.  In that letter, they solicited additional business from Bilyeu and provided a phone number inviting him to contact them.  Doc. 84-1, p. 5.  Such a solicitation sent directly and personally to an individual in a forum state is more than enough to find that Defendants "purposely directed [their] activities toward the forum state or purposefully availed [themselves] of the privileges of conducting activities there," and thus should not be surprised at being haled into court there. *Nuivo Pignone*, 310 F.3d at 378; *see*, *Hanson*, 357 U.S. at 250-251.

*3. Third ground - alter-ego or abuse of the corporate form*

   Plaintiffs allege that Defendants both directly took the activities described above, and we find such allegations, particularly when already corroborated in one instance, sufficient to make a prima facie case of minimum contacts.  However, it could be objected that the allegedly fraudulent loans were actually made by Optech, not Defendants.  We do not find this objection persuasive, for even if one accepts the premise, jurisdiction would still be proper because Plaintiffs allege sufficient facts to

16

sustain a prima facie case of alter-ego. Questions of alter-ego typically involve fact intensive disputes of material fact and thus are usually more appropriate for summary judgment than a motion to dismiss, and we find so here. However, to detail the facts which form the basis of this claim, Defendants allegedly used Optech as a dummy corporation to perpetrate a fraud. They allegedly covered up this fact in various ways, including "chang[ing] the companies' identities through which they conduct their business to evade the government." Doc. 1-2, p. 12. Moreover, there are also facts suggesting that Optech was undercapitalized, as it is now, by Defendants' admission and despite Plaintiffs' supposed loan, in "no asset bankruptcy." Doc. 53, p. 2.

If these issues will be decided then the Court would seems to face the choice of law issue of under which jurisdiction's law alter ego should be examined, the law of Optech's place of incorporation (Hong Kong), where it is registered to do business in the United States (New York), or the law of the forum (Louisiana). There seems little support for the first option, to evaluate alter ego under the foreign corporation's home country's law. *See, e.g., Turan v. Universal Plain Inv. Ltd.*, 70 F.Supp.2d 671 (E.D.La. 1999). Between the other two options, the jurisprudence seems somewhat conflicting. Where a federal court sits in diversity, the forum law for choice of law purposes is the law of the state where the court sits. *E.g., Hargrave v. Fireboard Corp.*, 710 F.2d 1154 (5th Cir. 1983); *Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d 117 (2nd Cir. 1984). Accordingly, the Court should apply Louisiana's choice of law rules. However, while some courts like *Hargrave* found under these rules that alter ego is governed by the law of the state of incorporation, others have found that they call for the application of the

17

law of the forum state, especially when the corporation was not qualified to do business in the form and the veil piercing was sought to protect and vindicate the rights of a local plaintiff. *See, e.g., Wooley v. Lucksinger*, 14 So.3d 311, 356 (La.App. 1 Cir 2008); *See generally*, George A. Bermann, *Transnational Litigation*, pp. 61-65 (2003) (discussing "piercing the jurisdictional veil" and finding that "there is little clarity as to the state whose law . . . is properly applied in making this determination.").

For the present, the Court need not decide this issue, based on one of the first principles of conflict of laws, that where different jurisdictions' laws yield the same result on an issue, "no conflict" is said to exist and the Court need not make a complex - and perhaps offensive to one state or another - choice of law determination. *Wooley*, 14 So.3d at 356 (citing La. C.C. art. 3544(1).

As discussed, *supra*, pp. 8-9, both New York and Louisiana law recognize alter ego theory when the corporate form is used to perpetrate or further fraud or illegality, and both recognize undercapitalization as a factor supporting a finding of alter ego. We find that both states' laws would support a finding of a prima facie case of alter ego based on the facts alleged, that the corporate form was allegedly fashioned and then used by Defendants to perpetrate massive and deliberate financial fraud on Plaintiffs with Defendants' full knowledge and active participation, and that the corporation was undercapitalized. *See, Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46 (2001) (finding alter ego appropriate when a corporation commits fraud and the Defendants participated in it or had knowledge of it); *Escoto v. U.S. Lending Corp.*, 675 So.2d 741, 745 (La. App. 4th Cir. 1996).

Finally, we note only preliminarily that, even were the case evaluated under the law of Optech's place of incorporation, Hong Kong law may well also permit veil-piercing on these same grounds, particularly given the evidence of Optech's undercapitalization. *See*, Feng Jinwei, "Piercing the Corporate Veil," *China Law and Practice* (February 2001) (discussing a case where a Chinese court pierced the veil for undercapitalization and citing and various articles of Chinese law relating to this issue).

## II. Prong Two: Plaintiffs' claims two, five, and six "arise out of" these contacts

Having determined that Defendants purposefully directed their allegedly fraudulent activities at Louisiana and its residents, we turn to the second prong of the specific jurisdiction test, whether Plaintiffs' claims arise out of or relate to these activities. *See, Nuivo Pignone,* 310 F.3d at 378. This is a claim-specific inquiry. *See*, discussion, *supra,* pp. 4-5, citing *Seiferth* 472 F.3d at 274-75.

In their complaint, Doc. 1-2, Plaintiffs assert claims for (i) breach of fiduciary duty, pp. 11-13, (ii) fraud, pp. 14-17, (iii) negligence, pp. 17-21, (iv) negligent misrepresentation, pp. 21-24, (v) breach of contract, pp. 24-25, and (vi) civil conspiracy pp. 25-26. Plaintiffs do not differentiate which claims they intend to maintain against which defendant.

Some claims are clearly directed at certain defendants, such as Plaintiffs' attorneys and financial advisors, and not Defendants who make the present motion. So, claims one, breach of fiduciary duty, three,[2] negligence, and four, negligent

---

[2] In a presumed typo, Plaintiffs skip claim three and label both of these "fourth claim". We have corrected for that error here. Accordingly, the first"fourth claim", negligence, Doc. 1-2, p. 17, is here referred to as claim three. The rest of Plaintiffs' numbering is unchanged.

misrepresentation, arise from certain defendants' violation of their fiduciary duty to Plaintiffs and the giving of legal and/or financial advice. allege the giving of negligently poor legal and financial advice.  None allege that Defendants are the fiduciaries of Plaintiff or facts which would give rise to such an inference, and neither Defendants nor Optech are alleged to ever have offered Plaintiffs any advice.  Accordingly, we find that claims one, three, and four are not intended for the present Defendants and do not arise out Defendants' contacts with plaintiffs.

Claims two and six, for fraud and civil conspiracy respectively, arise directly out of Defendant's allegedly fraudulent contacts with the forum, especially the Loan Schedule documents they mailed to Plaintiffs in Louisiana.  Specifically, the fraud that allegedly targeted Plaintiffs in this state is the "pre-planned game plan" that Defendants allegedly designed, created, and then recruited co-conspirators to execute.  Doc. 1-2, p. 15.  Further, the heart of these claims - the conspiracy to obtain securities on false pretenses that they could then sell instead of retaining as promised - arises from the allegedly fraudulent statements contained in the Loan Schedule documents, every page of which one Defendants signed, which Defendant mailed to Plaintiffs in Louisiana, and the four allegedly deceitful contracts Defendants struck with Plaintiffs through these documents.  These are also the documents that created the "continuing obligations" between Defendants and Louisiana Plaintiffs, the violation of which likewise gives rise to Plaintiffs' claims. However one frames the issue, the false information in these "loan" documents ultimately *was* the alleged fraud and conspiracy, and thus the claims for fraud and civil conspiracy arise directly from these contacts.

20

The viability of claim five, for breach of contract, is a difficult call only because it is not clear if Plaintiffs intend that it be based on their loan contract with Optech, or only on their contract(s) with their legal and investment advisors.   In opposition, the complaint says that, "[i]n connection [with  these contracts], these Defendants were required and expected to meet all applicable standards of care, and to meet the fiduciary duties of loyalty and honesty."  Doc. 1-2, p. 24.  As noted, there was no contractually provided fiduciary duty between Plaintiffs and Defendants and / or Optech. On the other hand, the claim describes the contracts as being for "competent advice and services," while the purely advisor-targeted claims discussed above speak only of "advice" and "advising."  In addition, in several paragraphs, Plaintiffs describe in the first sentence a failure of the contract with its advisors, and then in the second sentence a failure based on Defendants' allegedly fraudulent loans.  We err on the side of caution because it would be more cumbersome for the parties and the Court if we would misread the complaint and imprudently dismiss a claim than if we merely consider and temporarily keep alive a claim Plaintiffs do not wish to pursue. For this reason, we rule as if Plaintiffs intend to maintain claim five against the present defendants and invite clarification from Plaintiffs if this is not actually the case.  In line with this assumption and the facts concerning the contractual documents Defendants mailed to Plaintiffs described above, we find that the breach of contract claim arises directly out of Defendants' contacts with the forum.

21

Accordingly, we find that claim five, for breach of contract and claims two and six for fraud and civil conspiracy respectively arise from Defendants' contacts with the forum, while claims one, three, and four do not and should be dismissed.

## III.  Prong Three: Specific Personal Jurisdiction would not here be Unfair or Unreasonable

Once the plaintiff establishes that its claims arise out of its minimum contacts with the forum, the burden shifts to the defendant to show that the assertion of personal jurisdiction over him would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271. It is rare that a defendant can make such a showing once the previous two prongs have been satisfied, and "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Wein Air*, 195 F.3d at 215.

Defendants here make no such argument. We nonetheless consider the factors discussed above, *supra*, p. 7, and find that the exercise of personal jurisdiction here would not be unfair or unreasonable. First, Louisiana has a significant interest in providing a forum for this action because the injured parties are Louisiana residents, and Defendants allegedly directed a fraud at the state. Second, litigating in Louisiana may not be entirely convenient for Defendants; however, this burden is the fair, reasonable, and foreseeable result of purposefully conducting business with residents of a forum and

22

directing numerous contacts into a forum state.[3]   Additionally, this burden is manifestly
outweighed by "plaintiffs' interest in securing relief, the interest of the interstate judicial
system in the efficient administration of justice, and the shared interest of the several
states in furthering fundamental social policies."  *Luv N' care*, 438 F.3d at 473.  The only
known nexus common to the alleged defendant co-conspirators, and to these defendants
and Plaintiffs, is this state.  If jurisdiction is not found here, then it is likely Plaintiffs
would find it necessary to maintain multiple suits throughout the country.  This would
seriously interfere with, if not make impossible, Plaintiffs' ability to secure relief, place
an unnecessary burden on the interstate judicial system, and complicate or, if
contradictory judgments result, undermine the several states' shared interest in
furthering fundamental social policies, such as combating fraud.

   Accordingly, jurisdiction over Defendants for these claims is here not found to be
unfair or unreasonable.

Conclusion

   For the reasons given above, at present, we find that Plaintiffs' claims' two, five,
and six, for fraud, breach of contract, and civil conspiracy, meet all state law and
constitutional requirements for personal jurisdiction, and our exercise of jurisdiction over
Defendants in this forum for them is proper.  This conclusion is based on the motions'
current procedural posture, with Plaintiffs making a prima facie case of Defendants'
minimum contacts with the forum, these claims arising out of those contacts, and

---

[3]  We note that, though Optech is based in Hong Kong, it is registered to do business in the United
States, and Defendant Hsin is a resident of New York and Defendant Thomason maintains an
address in Arizona.  Ergo, the special burdens of transnational litigants are not applicable here
or weigh only lightly.  *See, Asahi Metal Indus. v. Superior Ct.*, 480 U.S. 102 (1987).

jurisdiction not otherwise being unfair or unreasonable.  Should further development of the Record reveal these contacts are not as Plaintiffs allege or yield any other facts that would make our exercise of jurisdiction improper, the Court remains open for future motions on the issue.

Accordingly, at present and for the reasons given above, Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 53) is PARTIALLY GRANTED, and CLAIMS ONE, THREE, and FOUR are DISMISSED, and PARTIALLY DENIED, and CLAIMS TWO, FIVE, and SIX are NOT DISMISSED.

SIGNED on this 30th day of September, 2010, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge