RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 5/10/13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WOODY D. BILYEU, et al. | CIVIL ACTION NO. 1:08-2006 |
| VERSUS | |
| | U.S. DISTRICT JUDGE DEE D. DRELL |
| JOHANSON BERENSON LLP, et al. | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

**M E M O R A N D U M   R U L I N G**

On January 21, 2013, the Bilyeus filed a motion to re-urge their motions to compel (Doc. 259). It is this motion which is currently before me for disposition (Doc. 261).

Background

Woody D. Bilyeu and Mary H. Bilyeau ("the Bilyeus") initially filed this lawsuit in the 8th Judicial District court for the Parish of Winn, State of Louisiana on October 3, 2008. The suit was removed to this court on December 23, 2008.

The Bilyeus contend defendants Optech Limited (Optech) and Verdia Solutions, LLC (Veridia) promoted, organized and operated the 90% Loan Structure ("90% loan"). The 90% loan was marketed as a transaction which would allow customers to "monetize" stock without having to pay federal income tax on capital gains. Optech and Veridia then recruited people and companies such as David Johanson, his law firm, David Johanson, LLP, and David Johanson and Rachel J. Markun, A Professional Corporation f/k/a David Johanson,

A Professional Corporation (collectively, "the Johanson Defendants") to market, sell and implement the 90% loan.

The Bilyeus further contend the Johanson Defendants, in marketing the 90% loan, made representations to customers that it was in fact a loan, not the sale of the customer's securities. Thus, it did not give rise to a taxable event and the securities the customer transferred as collateral were maintained during the term of the loan. The Bilyeus argue the Johanson Defendants knowingly made these false representations with the intention to defraud and it is that argument that is at the heart of their motion to re-urge the motions to compel (Doc. 259).

The initial motions to compel (Doc. 181 and 182) were filed by the Bilyeus on or about March 19, 2012. Following a hearing by telephone on April 19, 2012 and additional attempts by the parties to resolve the discovery issues, a hearing was held before me on August 1, 2012. At that time, I found the requests pertaining to information supporting claims of fraud or conspiracy were premature as evidence of fraud and/or conspiracy were lacking; accordingly, I ruled the Bilyeus could re-urge the motions to compel production of documents and responses to interrogatories if evidence of fraud was found to exist.

<u>Law and Analysis</u>

The Bilyeus argue that the communications between selling shareholders and the Johanson Defendants are not subject to the

attorney client privilege. The burden of proving the existence of the privilege rests on the Johanson Defendants as they claim and rely upon its existence.

The Johanson Defendants state that they gave legal advice to the Bilyeus and other selling shareholders at the request of the corporations who were their clients. They contend that while the privilege was held by the corporations, it encompassed communications between the corporate attorney(s) and the corporations' shareholders, officers and/or directors. In support, the Bilyeus cite Upjohn v. United States, 449 U.S. 383 (1981), Ward v. Succession of Freeman, 854 F.2d at 785 and Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970). None of these cases have analogous facts and I do not find the holdings apply.

In diversity cases, the scope and application of the attorney client privilege shall be determined by applying the law of the state where the court sits. Fed.R.Evid. 501; Exxon Corporation v. St. Paul Fire & Marine Ins., 903 F.Supp. 1007, 1008-09 (E.D.La. 1995). Accordingly, Louisiana law regarding attorney client privilege applies and according to Louisiana Code of Evidence article 503(B), communications with attorneys made for purposes other than giving or obtaining an opinion on the law or legal services are not protected by the privilege.

The reason the Johanson Defendants spoke to the corporations' shareholders was to encourage them to sell stock to their clients'

ESOPs. It was not to gather information in anticipation of litigation as was the case in Upjohn. It wasn't to provide legal advice regarding strategic moves the corporation should make. Rather, it was a discussion regarding an investment opportunity. While the Johanson Defendants labeled the form memoranda provided to potential investors "privileged and confidential" and cited to cases related to tax deferral strategies, the Johanson Defendants also clearly set forth on the memorandum and supplemental memorandum that neither was an opinion letter. (Doc. 276, Ex. 53, p. JB01034 and JB1066).

As such, I find an attorney client privilege did not and does not exist with respect to communications made between the Johanson Defendants and the selling shareholders.

The Johanson Defendants shall provide responses to both interrogatories and requests for production as set forth in the accompanying Order. Additionally, in light of the foregoing finding, the arguments regarding the crime fraud exception and waiver of the attorney client privilege are moot and will not be addressed.

THUS DONE AND SIGNED at Alexandria, Louisiana this 8th day of May, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE